J. A. MINNIS, ADMINISTRATOR OF C. E. SHARPE, DECEASED, v. W. E. SHARPE, J. L. SCOTT, JOHN M. FIX, J. C. STALEY, MRS. MAUDE G. HOLT, EXECUTRIX OF THE ESTATE OF KIRK HOLT, DECEASED, JAS. N. WILLIAMSON, JR., S. G. MOORE AND C. V. SHARPE.

(Filed 24 February, 1932.)

1. **Corporations C c—Directors of corporation are liable for loss caused by their wilful or negligent failure to perform their duties.**

The directors of a corporation are neither guarantors of the solvency of the corporation nor insurers of the honesty or integrity of its officers or agents, nor are they required to personally supervise all the details of its business transactions, but they are regarded as trustees or *quasi*-trustees of the corporate property and are liable for such loss as is caused by their wilful or negligent failure to perform their duties, under the rule of that degree of care that would be exercised by an ordinarily prudent man under the circumstances in the transaction of his personal business.

2. **Same—Evidence of negligent failure of directors to perform their duties held sufficient to be submitted to the jury.**

Where, in an action against the directors of a corporation, the plaintiff's evidence tends to show that he had executed a mortgage on his property to the corporation and had repaid the greater part of the loan, and that thereafter the general manager of the corporation had informed him that it was necessary to refinance the loan and had induced him to execute another mortgage on the same property, but had failed to cancel the notes secured by the original mortgage, which the plaintiff was forced to pay, that the directors had left the corporate management exclusively in the hands of its general manager and that like transactions had been made by the general manager continuously over a period of years : *Held*, while ordinarily the directors would not be charged with notice of single or disconnected acts of mismanagement, it was for the jury to find, under the evidence, whether the mismanagement or fraud of the general manager had been so continuously and persistently practiced as to impute knowledge thereof to the directors and fix them with liability for the loss sustained by the plaintiff.

CIVIL ACTION, before *Devin, J.,* at April Term, 1931, of ALAMANCE.

This was a civil action instituted by the plaintiff against the directors of the Alamance Insurance and Real Estate Company, alleging that

said directors negligently failed to supervise the affairs of the corpora-
tion or to examine the business transactions thereof, and "negligently
and recklessly delegated the business and the whole management and
control of the affairs of said corporation to the said W. E. Sharpe,
whose reckless extravagance and fraudulent schemes and devices  . . .
wrecked said institution, thereby causing loss and damage to the plain-
tiff," etc.

The evidence disclosed that on 22 November, 1919, C. E. Sharpe and
wife executed and delivered a deed of trust to the Alamance Insurance
and Real Estate Company to secure sixteen bonds, aggregating $3,200,
each bond being in the sum of $200.00. Said deed of trust was recorded
28 November, 1919. Plaintiff offered testimony tending to show that
C. E. Sharpe, plaintiff's intestate, paid various sums of money to the
Alamance Insurance and Real Estate Company from time to time until
on or about 15 November, 1927, when the agents of the Alamance In-
surance and Real Estate Company approached plaintiff's intestate and
his wife and requested and urged them to execute a new deed of trust
to J. H. Joyner, securing $1,900, representing at the time that said sum
was the balance due on the original loan, and that the original bonds
would be canceled and returned to plaintiff's intestate and his wife.
After the Joyner deed of trust for $1,900 had been executed and de-
livered, plaintiff's intestate and his wife made frequent demand for the
cancellation of the original bonds evidencing the $3,200 loan. Finally,
after a long period of time, eleven of the original bonds, aggregating
$2,200, were returned to plaintiffs, but in the meantime three of said
original bonds had been sold to Mrs. J. I. Chandler and two to other
customers. The holders of these bonds made demand upon plaintiff for
the payment thereof, and Joyner, who holds the $1,900 issue of bonds, is
also demanding payment. The plaintiff offered evidence tending to show
that W. E. Sharpe was vice-president, director and general manager
of the corporation, and that Kirk Holt, deceased, was president thereof.

There was evidence of numerous transactions from 1919 to 1928,
involving duplicate and triplicate issues of notes or bonds upon the
same property, and these bonds were sold upon representation, by the
officers of the Alamance Insurance and Real Estate Company, that such
bonds were first mortgage bonds.

The corporation was placed in the hands of a receiver by order of the
United States District for the Middle District of North Carolina in
December, 1928.

The following issues were submitted to the jury:

1. "Were the defendants guilty of gross negligence and mismanage-
ment in the discharge of their duties as directors of the Alamance In-
surance and Real Estate Company as alleged in the complaint?"

2. "If so, what damage is the plaintiff entitled to recover of defendants?"

The jury answered the first issue "Yes, as to all defendants," and the second issue "$1,000."

From judgment upon the verdict the defendants appealed.

*Cooper A. Hall and Shuping & Hampton for plaintiff.*

*W. G. Coulter, M. C. Terrell and Brooks, Parker, Smith & Wharton for certain defendants.*

*H. J. Rhodes for S. G. Moore and C. V. Sharpe.*

BROGDEN, J. What duty does the law impose upon directors of a business corporation?

This cause was considered by this Court upon a former appeal reported in 198 N. C., p. 364, 151 S. E., 735. The decision establishes the proposition that a cause of action was properly alleged against the directors of the company who were parties to the suit.

There was much evidence introduced as to many transactions involving false representations and fraudulent devices in issuing bonds or notes purporting to be secured by first mortgage on real estate, extending over a period of several years. That is to say, a borrower would secure a loan of a certain sum of money and execute a deed of trust or mortgage upon his property. The notes evidencing the loan would be sold by the real estate company to various purchasers. The borrower would make payments to the real estate company from time to time as required by the contract. Before the loan was fully discharged the real estate company would approach the borrower and represent to such borrower that it was necessary to refinance the loan, and the borrower would issue other notes and secure the same by a mortgage or deed of trust upon his property, with the understanding and agreement that the former notes would be returned to him marked paid. The real estate company would sell the second issue of notes to various purchasers, omitting and neglecting to pay off the balance due on the first loan, and thus there would be duplicate and sometimes triplicate issues of notes upon the same property.

The plaintiffs contend that by virtue of the fact that this practice and custom had been in existence for many years, the defendants, as directors of the corporation, while not personally participating in such fraudulent schemes and practices, were nevertheless charged with constructive notice of the methods of doing business and the various misappropriations of money.

Directors are not guarantors of the solvency of a corporation, nor are they insurers of the honesty and integrity of the officers and agents. Neither are they required to personally supervise all the details of business transactions. The general rule of liability imposed by law was thus expressed in *S. v. Trust Co.*, 192 N. C., 246, 134 S. E., 656: "Directors and managing officers of a corporation are deemed by the law to be trustees, or *quasi*-trustees, in respect to the performance of their official duties incident to corporate management and are therefore liable for either wilful or negligent failure to perform their official duties." . . . To the same tenor is the principle announced in *Caldwell v. Bates*, 118 N. C., 323, 24 S. E., 481, where the Court declared "that the directors are liable for gross neglect of their duties, and mismanagement— though not for errors of judgment made in good faith—as well as for fraud and deceit."

The trial judge expressed the measure of liability as follows: "It was the duty of the directors to exercise due care to prevent frauds and wrongs from being practiced upon those who dealt with the corporation in the ordinary course of its business. It was their duty to exercise a degree of care that a reasonably prudent man as the director of a corporation would have exercised under like or similar circumstances and charged with like duty, the degree of care an ordinarily discreet business man would give to his own affairs. . . . The directors are liable if they suffer the corporate property to be lost by gross inattention to the duties of their trust and are not relieved of liability because they have no actual knowledge of wrong doing if that ignorance is the result of gross negligence."

Ordinarily, of course, directors would not be charged with notice by virtue of desultory, occasional .or disconnected acts of mismanagement or fraudulent transactions, but in cases where mismanagement and fraud has been persistently and continuously practiced for substantial periods of time a jury must determine whether the directors, in the exercise of that degree of care which the law imposes, should have known of such practices and that persons dealing with the corporation would be injured thereby.

The Court is of the opinion that there was sufficient evidence to be submitted to the jury, and consequently the judgment must be affirmed.
No error.